In re Howard LEVINE, Debtor.

**BURGER KING CORPORATION,**
**Plaintiff,**

v.

**Howard LEVINE, Sheila Levine, Stephen H. Judson, and HGC, Inc., Defendants.**

**Bankruptcy No. 82–00409–BKC–SMW.**
**Adv. No. 82–0314–BKC–SMW.**

United States Bankruptcy Court,
S. D. Florida.

June 10, 1982.

Michael J. Getelman, Miami, Fla., for defendant, Sheila Levine.

Hall & O'Brien, P. A., Miami, Fla., for plaintiff.

Stephen H. Judson, Miami, Fla., Trustee.

Martin L. Sandler, Miami, Fla., for defendant, Howard Levine.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE coming on to be heard upon a Complaint for Relief from Stay filed herein and the Court, having heard the testimony and examined the evidence presented; observed the candor and demeanor of the witnesses; considered the arguments of counsel and being otherwise fully advised in the premises, does hereby make the following findings of fact and conclusions of law:

That this Court has jurisdiction of the parties hereto and the subject matter hereof.

The facts underlying this dispute are as follows: On May 3, 1978, Dr. Howard Levine (debtor) and Jose S. Gomez (who together are the franchisees) entered into a Franchise Agreement with Burger King Corporation (creditor) under which the franchisees were licensed to operate a Burger King restaurant in exchange for the payment of royalties and advertising contributions. The franchisees also executed a Sublease Agreement for the restaurant property with a third-party owner (landlord). The creditor, pursuant to a Property Management Agreement with the landlord, assumed the responsibility of collecting rent and causing it to be paid to the landlord in a timely manner. The Property Management Agreement also provided that the creditor would be responsible for enforcing the Sublease Agreement between the landlord and the debtor. Although the Franchise and Sublease Agreements were subsequently assigned, with the creditor's approval, to HGC, Inc. (HGC), a California corporation, the franchisees remained individually liable for amounts due under the Franchise and Sublease Agreements.

On August 31, 1979, the franchisees were sent a Notice of Default reciting failure to pay sums due under both the Franchise and Sublease Agreements, as well as failure to meet various reporting requirements. The Notice of Default provided a thirty (30) day period to cure the default, after which failure to cure would subject both agreements to termination. The creditor also noted that there were efforts underway at that time to sell the franchise and stated that an extension of the thirty (30) day period was possible if progress was being made toward such a sale. On March 31, 1980, the creditor instituted a state court action against the franchisees and HGC to enforce the obligation due under these agreements. Because of continuing failure to pay, the creditor sent a Notice of Termination on September 1, 1981, pursuant to the terms of the agreements. In response to this Notice of Termination, the franchisees filed a Motion for Preliminary Injunction in state court, which was granted, allowing the franchisees to remain in possession of the restaurant upon the posting of a bond. No bond was posted and the creditor returned to court seeking to enforce the court's order. The trial court entered an order reaffirming its earlier order and giving the

franchisees an additional ten (10) days to post the bond or, if not, to allow the creditor to retake possession. The franchisees again posted no bond but instead took an interlocutory appeal from the last order of the state court. While that appeal was pending and on the day scheduled in state court for the trial of the case-in-chief, the debtor filed his Petition for Bankruptcy.

This adversary proceeding was brought by the creditor to further its efforts toward regaining possession of its restaurant franchise. The creditor alleges in its Complaint for Relief from Stay that the debtor has no proprietary interest in the subject property either by reason of the termination by the creditor of the Franchise and Sublease Agreements or, alternatively, by the assignment of the debtor's interest in that property to HGC, which corporation was never properly dissolved so as to revest any interest in the debtor. The debtor, on the other hand, points out that the state court decision, while it may appear to decide that a termination has occurred, in reality, never reached that issue. Therefore, as the debtor points out correctly, the issue remains to be decided by this Court. The debtor further argues that even if the Franchise Agreement was terminated, the Sublease Agreement would stand and constitute property of the debtor's estate. The creditor raised several other issues which the Court need not decide here as the issue of the debtor's interest in the property will be dispositive of this case.

Upon a thorough review of the documentory evidence and testimony at trial, the Court finds that both the Franchise and Sublease Agreements at issue here were terminated prior to the commencement of the debtor's bankruptcy proceedings pursuant to, and in accordance with, the express terms of those agreements. The Franchise Agreement provides that failure to pay royalties or advertising contributions as well as failure to submit required statements constitutes default. Likewise, under the Sublease Agreements, failure to pay rent constitutes default. The uncontested evidence presented by the creditor demonstrates that these incidents of default did occur. Upon such default, the Franchise Agreement provides for Notice of Default allowing thirty (30) days to cure the default after which, if such default is not cured, the agreement may be terminated. The Sublease Agreement provides for a ten (10) day period to cure nonpayment of rent after a Notice of Default is given, while default of other covenants in the Sublease Agreement require a thirty (30) day period to cure. The creditor gave a formal Notice of Default and allowed the outside limits of both agreements, a full thirty (30) days, to cure all defaults. Upon the expiration of that thirty (30) day period, the creditor was entitled to send an immediate Notice of Termination. That the creditor waited a full two years to terminate the agreements does not alter the fact that a proper Notice of Default was sent and the period to cure the defaults had elapsed. In the interim, between the Notice of Default and the Notice of Termination, the creditor sought to protect its rights collaterally by bringing action in the state court for recovery of the sums due and owing pursuant to the agreements. Based on the express language of the Franchise and Sublease Agreements, the uncontested evidence of default, and proper notice to the franchisees of such default, the Court finds that the Franchise and Sublease Agreements were terminated prior to the filing of the bankruptcy petition that precipitated this action. These agreements never became property of the estate and are therefore not subject to the automatic stay provisions of 11 U.S.C. § 362. The Court will therefore enter a Final Judgment in this matter finding plaintiff's Complaint for Relief from Stay is moot.