In re **TIRENATIONAL CORPORATION, dba National Tire Wholesale, Inc., Debtor.**

**Bankruptcy No. 84–01651.**

United States Bankruptcy Court, N.D. Ohio, W.D.

March 5, 1985.

H. Buswell Roberts, Jr., Toledo, Ohio, for debtor.

Mary Ann Whipple, Toledo, Ohio, for NTW.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court upon the Motion for Relief From Stay filed by National Tire Wholesale, Inc., NTW Dealership, Inc., and NTW, Inc. (hereinafter collectively referred to as NTW). The Court has conducted a Hearing on this Motion, at which it heard the testimony and received the evidence offered by both the Debtor-In-Possession and NTW. At the conclusion of that Hearing the parties agreed that the only issue to be decided by this Court is whether or not a franchise agreement had been terminated. The parties have each submitted post-hearing arguments regarding their respective positions on that issue. The Court has reviewed those arguments as well as the testimony and evidence offered at the Hearing. Based upon that review and for the following reasons the Court finds that the franchise agreement has been TERMINATED.

## FACTS

The Debtor-In-Possession in this case is a corporation engaged in the business of selling automobile tires along with other related products and services. For the past five years, this business has been conducted under the name of NTW, pursuant to a franchise agreement with NTW that was entered into on or about September 21, 1979. This agreement called for NTW to sell to the Debtor-In-Possession, at a dis-count, the tires and other associated products necessary for the operation of the type of store contemplated by the agreement. These sales would be on a revolving credit account with NTW and would be billable to the Debtor-In-Possession on a monthly basis. Concurrent with the franchise agreement, the parties executed a sublease, whereby the Debtor-In-Possession would lease from NTW two stores that were to be used as the business locations.

On or about June 28, 1984, each of the NTW entities filed a Chapter 11 Petition with the Bankruptcy Court for the Eastern District of Virginia. On July 23, 1984, NTW notified the Debtor-In-Possession that it was in default under the terms of the franchise agreement for non-payment of its account. At that time the Debtor-In-Possession had an outstanding balance of approximately Three Hundred Fifty-eight Thousand Six Hundred Twenty and 27/100 Dollars ($358,620.27). Payments on that amount had not been made for some time. Subsequent negotiations between the parties failed to resolve the differences which had existed between the parties regarding the manner in which the franchises should be operated. They also failed to reach any agreement as to payment of the Debtor-In-Possession's account. On or about September 24, 1984, NTW sent notice to the Debtor-In-Possession that its franchise agreement had been terminated. It should be noted that neither NTW nor the Debtor-In-Possession have applied, in the context of NTW's Chapter 11 proceeding, to have the franchise agreement accepted or rejected.

Concurrent with its termination of the franchise agreement, NTW filed an action in the Lucas County Court of Common Pleas. That action sought to recover from the Debtor-In-Possession the amounts owed on its account and to evict the Debtor-In-Possession from the subleased locations. A consent order was entered in that case, whereby the Debtor-In-Possession agreed to cease use of the NTW name, return all tires supplied by NTW, and to vacate the subleased premises on a date that was to be determined at a later time.

Although it appears as though some of the tires were returned, the Debtor-In-Possession continues in possession of the stores and has continued to use the NTW trademark.

On October 15, 1984, the date on which the Lucas County Court was to fix the time for the Debtor-In-Possession's departure, the Debtor-In-Possession filed its voluntary Chapter 11 Petition with this Court. As a result of the automatic stay, the action to evict the Debtor-In-Possession was discontinued. However, in an effort to pursue that eviction and to recover on certain security interests that were attendant to the franchise agreement, NTW filed the Motion which is presently before the Court.

## LAW

During the course of the Hearing on NTW's Motion for Relief From Stay, the issue has arisen as to whether or not the franchise agreement was still in effect at the time the Debtor-In-Possession filed its Petition. The Debtor-In-Possession has raised this issue in an effort to establish contractual rights which may be assumed during the course of its Chapter 11 proceeding. Specifically, it argues that because NTW has not accepted nor rejected the contract in its own case, it cannot act pursuant to that contract until all defaults have been cured and adequate assurance of future performance has been given. It also argues that under the terms of the franchise agreement, the purported termination was wrongful and, therefore, not binding on it. NTW argues that the agreement was terminated prior to the initiation of the Debtor-In-Possession's Petition and that there is nothing for the Debtor-In-Possession's estate to assume or reject.

■ The Debtor-In-Possession, in asserting its argument, apparently contends that simply because NTW has not accepted nor rejected the contract, the contract remains in effect despite NTW's termination. In this respect, the Debtor-In-Possession attempts to assert two positions that are otherwise diametrically opposed. On one hand, the Debtor-In-Possession asserts that because NTW has not accepted nor rejected the contract, it remains in effect. On the other hand, it asserts that because NTW has not accepted nor rejected NTW the contract, NTW is not entitled to exercise the termination provision. This argument has the effect of contending that the Debtor-In-Possession should be allowed to partake of the benefits of the contract without having to suffer the detriments. However, it is well established that a debtor, when asserting rights under a contract, cannot assert only those rights which are beneficial to the debtor. *In re Silver*, 26 B.R. 526 (Bkcy.E.D.Pa.1983). As long as a debtor continues to receive benefits under a contract, he must also bear the burdens or obligations thereunder. *Cottman Transmissions, Inc. v. Holland Enterprises, Inc. (In re Holland Enterprises, Inc.)*, 25 B.R. 301 (Bkcy.E.D.N.C.1982). Although the Debtor-In-Possession has asserted that NTW's termination was wrongful, as will be more fully explained, this assertion does not affect NTW's right to terminate. Therefore, the threshold question is whether or not NTW had the right to terminate the agreement prior to affirmatively accepting the contract within the context of its own Chapter 11 proceeding. Stated differently, the question is whether or not the franchise agreement continued in effect prior to its acceptance or rejection by NTW.

The provisions of 11 U.S.C. § 1107 state in pertinent part:

"(a) ... a debtor in possession shall have all the rights ... and powers, and shall perform all the functions and duties ... of a trustee serving in a case under this chapter."

Under this section, a Debtor-In-Possession may exercise all of the administrative powers available to a trustee appointed under the Bankruptcy Code. *Georgia Pacific Corp. v. Sigma Service Corp.*, 712 F.2d 962 (5th Cir.1983), *Brent Explorations, Inc. v. Karst Enterprises, Inc. (In re Brent Explorations, Inc.)*, 31 B.R. 745 (Bkcy.D.Col.1983).

■ The provisions of 11 U.S.C. § 365(a) state in pertinent part:

"(a) ... the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."

Under this section, a Debtor-In-Possession may accept or reject any executory contract that exists at the time the Petition is filed. Such contracts can only be rejected upon an affirmative order of the Court allowing the Debtor-In-Possession to do so. A Debtor-In-Possession or any other party to a contract may apply to the Court for an order allowing acceptance or rejection, and may make such application at any time between the filing of the petition and confirmation of the debtor's plan. *See*, 11 U.S.C. § 365(d). Until such time as the Court specifically allows the Debtor-In-Possession to reject a contract it continues to be effective and enforceable between the parties. *See, Matter of Computerized Steel Fabricators, Inc.*, 40 B.R. 344 (Bkcy. S.D.N.Y.1984), *Central Control Alarm Corp. v. Black (Matter of Central Watch, Inc.)*, 22 B.R. 561 (Bkcy.E.D.Wis.1982).

■ It is well settled that a franchise or license agreement is an executory contract within the contemplation of 11 U.S.C. § 365. *See, In re Petur U.S.A. Instrument Co., Inc.*, 35 B.R. 561 (Bkcy.W.D. Wash.1983), *Burger King Corp. v. Rovine Corp. (In re Rovine Corp.)*, 6 B.R. 661 (Bkcy.W.D.Tenn.1980). However, in the cases which have indicated that contracts continued in effect until affirmatively rejected, the Courts have only had to determine whether or not an unrejected contract continues in effect after confirmation of the plan. As previously indicated, they have answered that question in the affirmative. Nevertheless, the question in the case *sub judice* is whether or not a contract continues in effect prior to rejection or confirmation, and whether or not a creditor may act pursuant to such a contract without curing any prepetition defaults.

It has been stated that one of the necessary corollaries of the continuing effect of a contract without requiring the debtor to immediately cure defects or tender adequate assurance of future performance is the maintenance of the status quo until the debtor has an opportunity to decide whether or not to assume or reject the contract. *In re Webster Clothes, Inc.*, 36 B.R. 260 (Bkcy.D.Md.1984). This latitude to postpone the curing of defaults is intended to allow a debtor to put off acceptance or rejection until confirmation, and allow the Debtor-In-Possession an opportunity to assess the relative effects of a contract on its reorganization efforts. In that period a debtor is able to decide whether the contract is necessary for the reorganization, whether it is feasible to include the contract in the plan, and whether or not it will be able to cure any defaults if it chooses to accept.

■ In that light, it would be impractical to require a debtor to cure all defaults in order to continue to operate under a contract if ultimately the contract is to be rejected by the plan. As long as the debtor was to perform under the terms of the agreement during the period between filing and confirmation, it is not likely that the non-debtor party would be in a significantly worse position than it was immediately prior to the filing of the petition. On the other hand, requiring the debtor to make pre-acceptance or pre-rejection cure could foreseeably work a detrimental hardship on the debtor's reorganization efforts. Although such latitude could impose some hardship upon the non-debtor, it must be pointed out that the non-debtor is able to protect its position by filing with the Court, during the pre-confirmation period, an application to have the debtor accept or reject the contract. *See, In re Webster Clothes, Inc.*, supra at 264. In view of these considerations, it must be concluded that a debtor-in-possession is not required to immediately cure all defaults associated with an executory contract in order to continue operating under that contract during the pre-confirmation period, provided that the debtor-in-possession performs its obligations under the agreement.

■ In the present case, NTW has not, during the course of its own Chapter 11 proceeding, accepted nor rejected the Debtor-In-Possession's franchise agreement. It has also not had a Plan of Reorganization confirmed. Therefore, until such time as the agreement is rejected, accepted, or incorporated into the Plan, the franchise agreement with the Debtor-In-Possession continues in effect. Pursuant to that agreement, NTW noticed the Debtor-In-Possession with its default and made attempts to collect on the obligation it was owed. This appears to be a reasonable course, inasmuch as NTW was attempting to assess the value of its agreement with the Debtor-In-Possession for purposes of its own reorganization. If the Debtor-In-Possession were able to pay its indebtedness to NTW, it could prove to be a valuable asset for NTW's reorganization. On the other hand, if it could not, the franchise would be burdensome to the estate. The evidence shows that the Debtor-In-Possession was in substantial default of its payments and that such non-payment constituted, under the terms of the agreement, grounds for termination. Since the Debtor-In-Possession and NTW were unable to resolve their differences at the time notice of default was sent, NTW was within its rights under the contract to terminate the franchise.

■ The Debtor-In-Possession has attempted to show that NTW's termination of the agreement was wrongful. Specifically, the Debtor-In-Possession has attempted to demonstrate that NTW exerted, under the auspices of the contract, a burdensome degree of control over the management of the Debtor-In-Possession's operations. This question of control has been the source of an ongoing dispute between the parties for some time. A review of the franchise agreement appears to allow NTW a large degree of latitude in the requirements it could impose on the Debtor-In-Possession. However, even if NTW had unjustifiably interfered with the rights of the Debtor-In-Possession to operate under the agreement, this would not necessarily alter NTW's ability to find a franchisee in default. In the absence of NTW's petition, the Debtor-In-Possession would be able to assert a cause of action against NTW for interference with the contract or for damages resulting from abuse of the rescission provision. Because of the intervention of NTW's Petition, this action would become a claim against NTW's estate. Therefore, any rights the Debtor-In-Possession may have for its claim of interference must be asserted against NTW within the context of NTW's bankruptcy proceeding.

■ It should also be noted that to the extent the Debtor-In-Possession asserts that by virtue of NTW's allegedly wrongful conduct the contract should remain intact, it is asking this Court to require two unwilling parties to be bound in a contractual business relationship. Such an assertion cannot be supported by the concept of freedom of contract, nor can it be imposed in either law or equity. Where the parties to a contract reserve for one party the right to rescind the agreement, the non-rescinding party is required to seek his remedy as he would be entitled had no contract ever come into existence. *Brown v. Johnston*, 95 Ohio App. 136, 108 N.E.2d 298 (1952). However, this Court cannot force the parties to enter into a business relationship to which neither party appears willing to be bound. Even if the Court were willing to issue this type of order, it would be an order of specific performance, a remedy that may not be imposed when adequate compensation can be awarded in law. *See generally*, 49 Ohio Jur.2d *Specific Performance* § 64. Therefore, this Court cannot consider the Debtor-In-Possession's assertion of interference as affecting its rights under the contract.

■ The final question which remains to be answered is whether or not the Debtor-In-Possession may assert any rights in a contract that was terminated prior to the filing of its Petition. It is well settled that the filing of a petition in bankruptcy cannot resurrect a contract which terminated prior to the filing. *Moody v. Amoco Oil Co.*, 31 B.R. 224 (W.D.Wis.1983), *Burger King*

*Corp. v. Levine (In re Levine),* 22 B.R. 16 (Bkcy.S.D.Fla.1982), *Largo Village Shopping Center, Inc. v. Ruby's Florida, Inc. (Matter of Ruby's Florida, Inc.),* 11 B.R. 171 (Bkcy.M.D.Fla.1981), *Sarasota-Manatee Airport Authority v. Racing Wheels, Inc., (Matter of Racing Wheels, Inc.)* 5 B.R. 309 (Bkcy.M.D.Fla.1980). A Debtor-In-Possession can only assume those contracts in which it has rights or obligations when the case is commenced. It appearing in the present case that the Debtor-In-Possession's franchise agreement was terminated prior to the date on which its Petition was filed, it must be concluded that the Debtor-In-Possession has no rights to exercise any authority or activity which was made available to it under the agreement.

Therefore, based upon the foregoing analysis, it must be concluded that the Debtor-In-Possession's franchise agreement has been terminated. NTW's rights under that agreement continued in effect during the course of its Chapter 11 proceeding, despite the fact it has not been affirmatively accepted nor rejected. Under that contract, NTW has the right to rescind the agreement for a variety of reasons, including the non-payment of debts owed to it by the franchisee. The Debtor-In-Possession, being in default under the terms of the agreement, was subject to termination as a franchise by NTW. It appearing that NTW has terminated the agreement, and that this termination occurred prior to the filing of the Debtor-In-Possession's Petition, it must be concluded that there is no executory contract in existence which the Debtor-In-Possession can accept or reject. The franchise agreement has been properly terminated.

In reaching this conclusion the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

It is ORDERED that the franchise agreement between NTW and the Debtor-In-Possession be, and is hereby, held as TERMINATED.