**In re BELL & BECKWITH, Debtor.**

**Bankruptcy No. 83–0132.**

United States Bankruptcy Court,
N.D. Ohio, W.D.

June 4, 1985.

Fuller & Henry, Toledo, Ohio, for trustee.

Joel M. Wolosky, New York City, N.Y., for Frederick S. Todman and Co.

Eugene R. Erbstoesser, New York City, N.Y., for Arthur Young & Co.

Michael Don, Washington, D.C., for SIPC.

James A. Hofelich, Cleveland, Ohio, for Partners.

Alan K. Kirshner, Toledo, Ohio, for Irene Smith.

Frank C. Razzano, Washington, D.C., Louis J. Hattner, Toledo, Ohio, for McKennys.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court upon the Motion for Approval of Settlement Agreement with Arthur Young & Compa-

ny, filed by the Trustee in this case, and the Objections to that Motion filed by Charles and Mary McKenny (hereinafter the McKennys), J. Robert Jesionowski, George Todd, Roscoe R. Betz, Robert R. Coon, Jr., Thomas L. McGhee, John E. Thompson, and Ronald Henninger (hereinafter the Partners), the Fredrick S. Todman & Company (hereinafter Todman), and Irene Smith (hereinafter Smith). Also before the Court is the Trustee's Motion To Overrule the Objections of Fredrick S. Todman & Company to the Motion For Approval of Settlement with Arthur Young & Company and the response to that Motion filed by Todman. The parties have filed Pre-Hearing arguments regarding the merits of these Motions and have participated in the Hearing which was conducted by this Court. At that Hearing the Court received both the evidence and arguments of counsel regarding the Motions presently under consideration. In addition, the parties have been afforded the opportunity to submit both post-hearing arguments and responses to the arguments made by opposing counsel. The Court has reviewed the testimony, exhibits, and arguments of counsel, as well as the entire record in this case. Based upon that review and for the following reasons the Court finds that the Objections of the McKennys, the Partners, Todman, and Smith should be OVERRULED, and that the compromise should be APPROVED. The Court also finds that the Motion of Trustee to Overrule the Objection of Todman based upon standing should be DENIED.

### FACTS

The Movant in this case is the Trustee for the liquidation of the Debtor-brokerage, pursuant to the provisions of 15 U.S.C. § 78aaa *et seq.* The Debtor in this case is a stock brokerage located in Toledo, Ohio, known as Bell & Beckwith. The brokerage operated as a partnership and was managed by Edward P. Wolfram, Jr. Approximately ten years prior to the initiation of liquidation proceedings, Wolfram began a course of conduct, whereby he systematically and fraudulently diverted cash and securities held by the brokerage in the customer margin accounts into accounts which were controlled by Wolfram. In order to accomplish these diversions, Wolfram employed an internal accounting procedure which reflected that his transfers were collateralized by other securities which were held by the brokerage in other brokerage accounts, a process required by securities regulations when internal transfers are made. In this case, the collateralization primarily involved shares of the Toto Corporation, a Japanese based company. Although such collateralization procedures are accepted practice within the securities industry, Wolfram's collateralization of these transfers rapidly consumed the total value of Toto securities held by the brokerage. At the time these diversions began the shares of Toto were valued at approximately Two and no/100 Dollars ($2.00) each.

In order to continue these diversions, Wolfram was required to find or create other assets by which to secure his ongoing transfers from the margin accounts. Having apparently exhausted the brokerage's supply of assets available for collateralization, Wolfram began to inflate the value of Toto stock as it appeared on the books of the Debtor. By doing so, he was able to create value which, upon cursory examination, would secure the transfers from the customer accounts. Throughout the period in which these diversions occurred, the value of the Toto securities, as reflected on the Debtor's books, continued to escalate until it reached approximately Ninety-nine Thousand Nine Hundred Ninety-nine and no/100 Dollars ($99,999.00) per share, the value which appeared on February 10, 1983, the date the brokerage was ordered into liquidation. At that time the actual price of Toto stock remained at approximately Two and no/100 Dollars ($2.00) per share.

Prior to the time Wolfram began his fraudulent diversions, Arthur Young & Company (hereinafter Arthur Young) was employed by the brokerage to conduct the annual audit of the brokerage and to pub-

lish the brokerage's annual report. The precise date on which their employment began is unclear. Subsequent to the time Wolfram began his fraudulent activities, and until approximately March 31, 1976, the reports issued by Arthur Young failed to detect or disclose the fact that the value of securities used to secure the transfers from customer accounts was insufficient to adequately collateralize those transfers. However, it appears that as of approximately March 31, 1976, the end of the Debtor's fiscal year, Arthur Young became aware of certain discrepancies in the accounting procedures employed by Bell & Beckwith. Specifically, Arthur Young learned that the integrity of Bell & Beckwith's internal accounting controls had not been maintained. The auditors confronted the partnership with those improprieties, a confrontation which apparently resulted in a termination of Arthur Young's employment by the Debtor. Although the precise amount of money which had been illegally diverted as of that time is unclear, it appears to have been approximately Seven Hundred Seventy-seven Thousand and no/100 Dollars ($777,000.00).

The Debtor then employed Todman to assume the role as the brokerage's auditors, and it continued in that capacity until the time the Debtor was Ordered into liquidation. Although the magnitude of Wolfram's diversions continued to increase during Todman's tenure as auditor, the financial reports issued by Todman regarding the Debtor's financial affairs apparently also failed to detect or disclose the under-collateralized transfers. At the time the United States District Court for the Northern District of Ohio, Western Division, ordered the brokerage closed, there existed in the Debtor's customer accounts an actual deficiency of approximately forty-six (46) million dollars.

Shortly after the brokerage was closed, a number of lawsuits were filed against Todman by different plaintiffs. These plaintiffs included the customers of the brokerage, the partners of the brokerage, and the Trustee in this case. The basis for these actions involved allegations of accountant malpractice in the preparation and publishing of the Debtor's annual financial reports. Although these actions were filed in both federal and state courts, the Trustee sought and received a stay of all other actions against Todman which stemmed from its involvement with the Debtor. With the exception of limited proceedings, these other actions have remained stayed since that time. The only suit which has undergone prosecution is that filed by the Trustee.

The Trustee has not filed an action against Arthur Young, inasmuch as it appears that those parties have been negotiating a settlement since the commencement of these proceedings. Having reached such a settlement as to any cause of action which accrued to the brokerage as the result of Arthur Young's alleged malpractice, the Trustee has applied to this Court for approval of that agreement. The terms of that compromise call for Arthur Young to deposit in an interest bearing account the sum of Three Hundred Eighty-three Thousand Five Hundred Twelve and 44/100 Dollars ($383,512.44). In the event the Court would approve the agreement, the Trustee would be entitled to withdraw the funds for the benefit of the estate. The agreement also provides that upon receiving such approval, the parties would execute mutual releases as to any liability existing between them relating to Arthur Young's involvement with Bell & Beckwith. In addition, the agreement provides that in the event the compromise is not approved, the Trustee would be given sixty (60) days from the date of the Court's rejection in which to file a complaint against Arthur Young, despite the passing of any statute of limitations. The Trustee asserts that the acceptance of this agreement would be in the best interest of both the creditors and the estate.

As has been previously indicated, objections have been raised to the proposed settlement. The McKennys, two of the larger customers of the brokerage, have objected to the compromise on the grounds that the Trustee has not demonstrated any reason why Arthur Young should be relieved of

liability for the entire amount of the deficiencies. Specifically, they contend that the failure to detect the deficiencies prior to 1976, an action which, if disclosed, would have prevented any further deficiencies, renders Arthur Young legally liable for the entire amount of the deficiencies. Smith, both a limited partner of the brokerage and a customer of the brokerage, has objected to the settlement on the grounds that the Trustee does not have standing to represent either the interests of a limited partner or the partnership itself, and that the Trustee has not demonstrated sufficient facts so as to conclude that the compromise is in the best interests of the estate. Smith further asserts that Arthur Young can be held liable for the entire amount of the deficiencies and should, therefore, not be allowed to avoid such liability for a fraction of what otherwise might be owed.

The Partners have objected to the compromise on the basis that the Trustee cannot adequately represent their interests in this matter. This Objection has two facets. Initially, the Partners assert that the Trustee cannot represent and prosecute their claims against the accountants for those losses which are not necessarily associated with the Partners' claims against the Debtor's estate. Specifically, those losses would be for lost future income, the good will of the business, and the value of any property which may be taken from them as the result of their partner liability to the estate. Secondly, the Partners contend that the Trustee cannot act as both an advocate of their claims as customers of the brokerage, and as a plaintiff in an action against them for any deficiency of the estate in paying the claims of creditors.

Todman has objected to the settlement based partly upon grounds which have previously been reviewed and partly upon grounds which are unique to Todman. Initially, Todman asserts that the settlement and release of Arthur Young by the Trustee would effectively foreclose any cause of action by Todman against Arthur Young for contribution. Such a foreclosure, it is argued, would unfairly deprive Todman of rights which, if the liability of both accountants is not contemporaneously determined, it might otherwise have. Todman also asserts that the agreement does not appear to have been made in good faith, in light of the disparity between the amount of the settlement and the amount for which Todman contends Arthur Young is ultimately liable. Todman further contends that the amount to be received from the Arthur Young settlement is insufficient to pay the Counterclaims asserted by Todman in the Trustee's malpractice suit. Therefore, it is claimed, the settlement is not in the best interests of the creditors. Finally, Todman argues that as the result of an apparent conflict of interest between the Trustee and the other parties involved in this matter, the Trustee is ineligible to represent the interest of the general partners, limited partners, customers, creditors, and the Securities Investor Protection Corporation.

In addition to the proposed settlement, the Trustee has moved this Court to overrule the Objections of Todman on the grounds that Todman has no standing from which to raise an objection. Specifically, the Trustee contends that by virtue of the fact that Todman has not filed a Proof of Claim in this case, and the fact that the time in which to file a claim has elapsed, Todman cannot have an allowable claim. Therefore, Todman has no interest in the amount of money collected by the estate for distribution to creditors. It appears that Todman's only claim against the Debtor results from the counterclaims made by it in the Trustee's malpractice suit. Furthermore, the Trustee contends that the filing of those counterclaims, claims which appear to address causes of action that arose prior to the initiation of liquidation proceedings, were in violation of the automatic stay. Accordingly, the counterclaims should be held as void, thereby leaving Todman with no claim against the estate and no interest in the outcome of any proposed compromise. Todman argues that its counterclaims arise from causes of action which could only be brought subsequent to the filing of both the liquidation

order and the Trustee's malpractice suit. As a result they are not foreclosed by the stay. Todman also argues that inasmuch as the claim arose post-petition, the filing of a Proof of Claim is unnecessary.

## LAW

In reviewing the matters presently before the Court, the Court notes that many of the issues raised in the Objections have been raised by more than one of the Objectors. In addition, the resolution of the Objections will also resolve many of the issues which this Court must necessarily weigh in determining whether or not to accept the proposed compromise. Accordingly, this Memorandum Opinion and Order will collectively consider the issues raised by the various Objectors and will address those Objections prior to discussing the merits of the proposed settlement.

## I

The first issue to be resolved is whether or not Todman has standing to object to the compromise. In addressing that issue, it should be recognized that at this point in the case a decision on this issue has little importance, inasmuch as Todman's counsel has participated throughout these entire proceedings. Furthermore, even if the Court were to deny Todman standing, that decision is likely to be appealed, thereby prolonging what has already become unnecessarily protracted litigation. However, the issues raised by the question of Todman's standing are relevant to other issues which must be considered by the Court in its decision as to the propriety of the compromise. Therefore, in order to clarify the record and to elaborate on the issues which will be more fully developed later in this Opinion, the Court will review the arguments as to the merits of Todman's standing.

█ The Trustee has asserted that the filing of counterclaims by Todman in the Trustee's malpractice suit was a violation of the automatic stay and should be held as void. This assertion is important to the Trustee, inasmuch as these counterclaims are the only means by which Todman can assert an interest in the estate. However, the provisions of 11 U.S.C. § 362 state in pertinent part:

"... an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U.S.C. 78eee(a)(3)), operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;"

As was held in *In re M. Frenville Co., Inc.*, 744 F.2d 332 (3rd Cir.1984), the provisions of this section only stay the commencement of proceedings which could have been brought prior to the filing of the petition for relief. They do not stay the post-petition filing of actions against the Debtor when the cause of action, if arising post-petition, addresses conduct which occurred prior to the petition.

█ In the present case, it appears that the Counterclaims filed by Todman are seeking contribution or set-off of damages it may incur as the result of the Trustee's malpractice suit. In this respect, it appears that such counterclaims could not have been asserted until an action was brought against it by the Trustee. Since the Trustee's action must necessarily have been filed subsequent to the initiation of liquidation proceedings, the filing of these particular counterclaims was not a violation of the automatic stay. It should also be noted that the filing of an action against Todman would have the effect of relieving the stay as to Todman for the limited purpose of asserting counterclaims which affect or are related to the allegations made by the Trustee. *See, Tirenational Corp. v. NTW, Inc. (In re Tirenational Corp.)*, 47 B.R. 647 (Bkcy.N.D.Ohio 1985). Since Todman's Counterclaims directly relate to

the action brought by the Trustee, they cannot be considered to be in violation of the stay. Therefore, it must be concluded that the filing of Counterclaims by Todman was not a violation of the automatic stay.

The Trustee has also objected to Todman's standing on the grounds that Todman, having not filed a timely proof of claim, will not be entitled to share in any distribution from the estate and, therefore, has no interest in the proposed compromise. As previously indicated, any claim which could be asserted by Todman would result from the Counterclaims it has filed in the malpractice action. However, despite the fact that a proof of claim has not been filed, and the fact that the time for filing such proof has expired, Todman may still be eligible to participate in the estate. Once customer property has been distributed under the provisions of 15 U.S.C. § 78aaa *et seq.*, the liquidation of the Debtor then proceeds under the provisions of Title 11. *See,* 15 U.S.C. § 78fff.

The provisions of 11 U.S.C. § 726(a) state in pertinent part:

"... property of the estate shall be distributed—
(3) third, in payment of any allowed unsecured claim proof of which is tardily filed ..."

Under this provision, a creditor is afforded an implied right to file a claim after the time set forth in the rules for the filing of claims has expired. Therefore, it would appear that Todman, in the event they should file a claim, would be eligible to receive a dividend from the estate if there are sufficient funds to reach the level of priority in which they would be situated and the claims were allowed.

The final issue which arises as to Todman's standing, an issue which was not addressed in the proceedings on standing but which does affect their right to object, involves the question of whether or not the proposed settlement by the Trustee with Arthur Young will foreclose any action by Todman against Arthur Young for contribution. Todman has asserted that in the event it is found to be liable for any defi-

ciencies in the brokerage, it will have a right to seek contribution from Arthur Young for part or all of that which Todman is liable. Todman's concern on this issue results from the operation of Ohio Revised Code § 2307.32 which states in pertinent part:

"(F) When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:
(2) It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor."

Under this provision, a settlement and release of one tortfeasor by a plaintiff prevents any other joint tortfeasor from seeking contribution against the released tortfeasor. However, implicit in the operation of this statute is the existence of a right to contribution between tortfeasors. Although Ohio law previously prohibited contribution between tortfeasors, the right of contribution is now statutorily authorized. *See,* Ohio Revised Code § 2307.31.

As previously indicated, the Trustee's settlement with Arthur Young contemplates that Arthur Young will be released from any liability for its involvement with Bell & Beckwith. Todman asserts that if this is done it will be precluded from seeking contribution from Arthur Young, and that the settlement should not foreclose that right without first determining the relative liability of each tortfeasor. While it initially appears that this argument carries some merit, it also assumes that there is a right to contribution between Arthur Young and Todman. As will be discussed more fully, it appears that under Ohio law there may not be a right of contribution between these parties. This results from the fact that current case law appears to hold that Todman's intervention as the Debtor's accountant absolves Arthur Young from any liability. Although the language of these cases is unclear as to the degree of that absolution, it appears that each tortfeasor can only be held liable for those deficiencies which developed during

its respective tenure as auditor. Specifically, it appears that the right of contribution arises only when tortfeasors have acted without a break in the chain of causation. As will be more fully explained, the circumstances of this case do not allow the conclusion that the accounting firms have acted in a fashion which continued any such chain. Therefore, Todman has no right to contribution which would be cut off by the settlement with Arthur Young. Accordingly, it is to be concluded that Todman has standing from which to object to the settlement, but that such standing arises from the possibility they could receive some distribution from the estate, and not from the fact that any right to seek contribution will be impaired.

## II

■■■ It is well settled that a Trustee in bankruptcy is authorized to settle or otherwise compromise claims which belong to the estate against other entities. *Merrill v. Abbott (In re Independent Clearing House Co.)*, 41 B.R. 985 (Bkcy.D.Utah 1984). In so doing, the compromises made by a Trustee are subject to the provisions of Bankruptcy Rule 9019(a) which state in pertinent part:

"(a) Compromise. On motion by the trustee and after a hearing on notice to creditors ... the court may approve a compromise or settlement."

Under this rule, any compromise entered into by a trustee must be reviewed by the Court and receive Court approval in order to become effective between the parties. *In re Flight Transp. Corp. Securities Litigation*, 730 F.2d 1128 (8th Cir.1984). In determining whether or not to accept a proposed compromise, the Court must consider only whether the settlement is in the best interests of the estate. *In re Flight Transp. Corp. Securities Litigation*, supra, *In re NEPSCO, Inc.*, 36 B.R. 25 (Bkcy. D.Me.1983). The factors to be considered when reviewing a compromise are the complexity of the prospective litigation, the probability of success, the delay and expense of litigation, and the paramount interests of the creditors. *Patel v. Patel (In re Patel)*, 43 B.R. 500 (N.D.Ill.1984), *Matter of Baldwin United Corp.*, 43 B.R. 888 (Bkcy.S.D.Ohio 1984), *Knowles v. Putterbaugh (In re Hallet)*, 33 B.R. 564 (Bkcy.D. Me.1983).

## III

The Objection has been raised that the proposed settlement will result in the release of a potential defendant whose liability and ability to pay any judgment may be much greater than that of Todman's. Specifically, it is asserted that Arthur Young may be liable for not only those deficiencies which existed at the time their employment was terminated, but may, in fact, be liable for the entire deficiencies of the brokerage. This assertion of liability is made on the theory that if Arthur Young had detected and disclosed the fraud prior to 1976, the subsequent diversions could not have occurred. If this theory is correct, then inasmuch as it appears that Arthur Young's liability coverage is significantly greater than Todman's, it would not be in the best interests of the estate to compromise with Arthur Young for less than the amount of the deficiencies.

■■■ This theory, as proposed by the Objectors, has as its basis the principles of concurrent tortfeasors and intervening superseding cause. Under these principles, when the actions of a second or successive tortfeasor cause a single, albeit compounding, injury, the original tortfeasor is responsible for any injuries caused by the successive tortfeasor. *See, Travelers Indemnity Co. v. Trowbridge*, 41 Ohio St.2d 11, 321 N.E.2d 787 (1975). Underlying this principle is the reasoning that had not the original tortfeasor created the opportunity for the second tortfeasor to be negligent, the compounding of the injury could not have occurred. Stated differently, the actions of the second tortfeasor are not considered to be a sufficient break in the chain of causation so as to allow the first wrongdoer to escape liability.

■■■ The rule just stated, however, does not encompass all situations wherein two

or more tortfeasors have contributed to a course of conduct which results in injury. When there intervenes between the conduct of the original tortfeasor and the injury another responsible entity which could have, should have, or had a duty to detect and prevent the injury, such intervention breaks the chain of causation between the original tortfeasor and the injury, and thereby relieves the original wrongdoer of liability. *Thrash v. U-Drive-It Co.,* 158 Ohio St. 465, 110 N.E.2d 419 (1953), *Cascone v. Herb Kay Co.,* 6 Ohio St.3d 155, 451 N.E.2d 815 (1983). Underlying this rule is the principle that the second tortfeasor, having a duty to detect existing or potential injuries and to mitigate their effect, has failed to fulfill its duty and should be held liable therefor. *See, Krysiak v. Acme Wire Co.,* 169 F.Supp. 576 (N.D.Ohio 1959), *Aetna Insurance Co. v. Loveland Gas & Electric Co.,* 369 F.2d 648 (6th Cir. 1966).

▆▆▆ The distinction between these two rules is found when the sequence of the intervention of the second tortfeasor and the occurrence of the injury is considered. Under the first rule, the injury has already occurred at the time the second tortfeasor intervenes. In such a circumstance, the fact that the successive tortfeasor exacerbates the injury does not break the chain of causation between the original tortfeasor and the injury, inasmuch as the actions of the original tortfeasor brought into operation the actions of the second tortfeasor. Under the second rule, however, the injury had not yet been disclosed at the time the second tortfeasor intervened. In that instance, the second tortfeasor has a specific duty to detect, disclose, and mitigate any injuries which have occurred or which could occur. The failure to satisfactorily perform that duty breaks the chain of causation between the original tortfeasor and the injury, inasmuch as the actions of the second tortfeasor would have caused the injury regardless of any contribution by the original tortfeasor. *See, Thropp v. Bache Halsey Stuart Shields, Inc.,* 650 F.2d 817 (6th Cir.1981). It would not appear that the concept of foreseeability has any relevance in the application of the second rule. The fact that the injury would have occurred without the cooperation of the first tortfeasor negates any requirement that a wrongdoer could have foreseen the negligence of a succeeding party.

In the present case, it appears that Arthur Young failed to perform their duty to audit the books of Bell & Beckwith in accordance with the accepted standards of the accounting profession. By failing to do so they failed to detect Wolfram's wrongful diversions. Although these diversions existed at the time their employment was terminated, they had not yet been discovered, nor had anyone actually been deprived of their securities. Had the diversions been disclosed in the first audit which followed the termination of Arthur Young's employment, then Arthur Young would have been liable for the entire deficiency which existed at the time of disclosure. However, it was not the negligence of Arthur Young which brought into play the employment of Todman. It was the fact that Arthur Young had begun to disclose the inconsistencies in the Debtor's accounting methods which led to its being discharged and the subsequent employment of Todman.

▆▆▆ It is this distinction in the facts which leads to the application of the second rule. If Arthur Young had negligently conducted the audits, and had the deficiencies been disclosed at the time their employment was terminated, then the fact that Todman allowed those deficiencies to grow despite their own succeeding negligence would not absolve Arthur Young from liability for the entire amount of those deficiencies. The subsequent negligence would not have been a sufficient break in the chain of causation so as to relieve Arthur Young of liability for the entire loss. However, when Todman was employed, the deficiencies had not yet been disclosed. The terms of their employment imposed upon them the duty to perform the audits of the brokerage in a manner con-

sistent with recognized accounting standards. As has been previously indicated, if this had been done the deficiencies would have been revealed at the time of their first audit. Todman's failure to discover or disclose the deficiencies allowed those deficiencies to escalate far beyond those which existed when Arthur Young was the Debtor's auditor. This failure to detect deficiencies was a breach of their duty to detect and disclose a potentially harmful situation. Such a breach of duty has the effect of breaking the chain of causation between Arthur Young's initial negligence and the deficiencies which were ultimately discovered when the brokerage was Ordered closed.

■■■■ Therefore, it should be concluded that Arthur Young cannot, under the law of Ohio, be held liable for the entire deficiency which existed at the brokerage. Although this Court has no opinion as to whether this break in causation totally absolves Arthur Young from liability or whether Arthur Young is liable for the deficiencies which existed as of March 31, 1976, at most, it appears that Arthur Young can be held liable for only those amounts which had been diverted during the time it was employed by the Debtor. Accordingly, the Objections which assert that such a small settlement should not be accepted in view of the potential liability are without merit.

## IV

There has also been an objection raised to the Trustee's standing to represent the interests of both the general and limited partners of the brokerage. This Objection has as its basis two distinct facets. First, it is asserted that the Trustee cannot represent the interests of the Partners as capital contributors and customers of the brokerage while, at the same time, maintaining a law suit against them for any deficiency which may exist once property of the Debtor has been exhausted. Secondly, it is asserted that the Trustee cannot properly represent the interests of the Partners in their claims against the accountants for losses which do not relate to their claims as customers. These losses would include future income, business good will, and any personal property which is attached by the Trustee for deficiencies of the estate in paying all claims.

■■■■ In the absence of liquidation proceedings, any cause of action for damages which accrued to the partnership as the result of an accountant's malpractice could have been prosecuted by the partnership in its own name. The most relevant part of that otherwise obvious statement is the fact that the suit would arise on behalf of the partnership and not on behalf of the individual partners. However, the partnership has been placed into liquidation. When that was done the provisions of 11 U.S.C. § 541 became applicable. *See,* 15 U.S.C. § 78fff(b). The provisions of that section state in pertinent part:

"(a) The commencement of a case under ... this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held ...

(1) ... all legal or equitable interests of the debtor in property as of the commencement of the case."

It is well settled that causes of action which belong to the debtor at the time of the commencement of a case become part of the estate. *Bryson v. Bank of New York,* 584 F.Supp. 1306 (S.D.N.Y.1984), *Matter of Raymond Construction Company of Florida, Inc.,* 6 B.R. 793 (Bkcy.M. D.Fla.1980). The Trustee, as representative of the estate, *see,* 11 U.S.C. § 323, is the only entity entitled to pursue such causes of action. Creditors of a debtor are not entitled to assert causes of action against a tortfeasor whose negligence has resulted in damages to both the creditor and the debtor if the damage to the creditor results solely from the fact that the creditor had a claim against the debtor. *See, Gochenour v. Cleveland Terminals Bldg. Co.,* 118 F.2d 89 (6th Cir.1941).

■■■■ In the present case, the Partners have claims against the estate for both their customer accounts and their capital contributions. To be the holder of such

claims is to be a creditor of both the debtor and of the estate. As creditors, they must look to the estate for satisfaction of their claims. The Trustee, as representative of the estate, is required to pursue the rights of the estate in a manner which will best serve the interests of all creditors. In so doing, the Trustee must necessarily act in the best interests of the Partners' claims against the estate. However, any action by the Partners to collect from Todman on the claims which are owed by the brokerage would be an attempt to collect on their claims from the assets of the Debtor and would be an unlawful interference with property of the estate. *See*, 11 U.S.C. § 362. Therefore, it must be concluded that the Trustee is both able and entitled to represent the interests of all creditors of the estate, including the Partners, in prosecuting the action against Todman, and that the creditors must look solely to the estate for satisfaction of their claims.

■ This is not to say, however, that the Partners have no causes of action which may be prosecuted against Todman. It is possible that the Partners may have claims against Todman for the loss of future income, business good will, and personal property taken by the Trustee for a deficiency in the estate. Such claims do not result from the Partners' creditor relationship with the Debtor, nor do such claims arise on behalf of the estate or any matters therein connected. They may arise on behalf of the Partners as the result of the liability attendant to the form of business organization in which they chose to operate. While pursuit of these claims may be legally premature at this time, this does not foreclose their eventual prosecution. Accordingly, it should be concluded that the Partners may maintain their actions against Todman to the extent those causes do not infringe on causes which belong solely to the estate.

■ The second facet of the Partners' Objection addresses the apparent conflict which arises when the Trustee purports to represent the Partners' customer and capital interests in the estate while at the same time maintaining a cause of action against them for an anticipated deficiency. While such a circumstance might appear to present diametric motivations, it is not unusual for these situations to occur in bankruptcy cases. For example, when a bankruptcy trustee initiates an adversary proceeding against an entity to recover a preferential payment from a creditor who received a portion of what was owed by the debtor, the trustee is both the representative of the creditor's claim against the estate and a plaintiff in an action against the creditor. The apparent conflict is negated by the fact that as representative of the estate the trustee is acting on behalf of the claims of all creditors equally and not on behalf of any individual creditor. The fact that a creditor is in possession of property which may be recovered for the benefit of the estate does not allow that creditor to retain the property and to receive a distribution from the estate which is otherwise greater in proportion than that received by other creditors. A creditor's interest in his claim is different than his possessory interest in property which may be recovered by the estate for the equitable satisfaction of all claims.

■ In the present case, the actions by the Trustee against the partners is an effort to acquire property which may be used to satisfy the claims of all creditors. In this respect, the Trustee represents the interests of the Partners as creditors of the estate and not the personal interests of the Partners as debtors of the estate. As long as a Trustee does not proceed in a manner which brings into conflict those two interests, there is not a conflict of interests in the Trustee's standing. Accordingly, it is concluded that the Partners' Objection on this issue is without merit.

V

■ The Objection has been raised that the Trustee does not have standing to represent the interests of either the customers of the brokerage or the Securities Investor Protection Corporation (hereinafter SIPC). The grounds for this Objec-

tion have not been made entirely clear. However, the provisions of 15 U.S.C. § 78eee(b)(3) state in pertinent part:

"(3) Appointment of trustee and attorney—If the court issues a protective decree under paragraph (1), such court shall forthwith appoint, as trustee for the liquidation of the business of the debtor and as attorney for the trustee, such persons as SIPC, in its sole discretion, specifies."

The provisions of 15 U.S.C. § 78fff–1(a) state in pertinent part:

"(a) Trustee powers.—A trustee shall be vested with the same powers and title with respect to the debtor and the property of the debtor ... as a trustee in a case under Title 11."

Under these provisions, it is clear that the Securities Investor Protection Act contemplates that a Trustee shall be appointed when a liquidation under that Act is commenced, and that a Trustee appointed for that liquidation is vested with the same powers and duties as a Trustee under Chapter 7 of Title 11. As previously indicated, the Trustee is the representative of the estate who is legally bound to act on behalf of all creditors. *See,* 11 U.S.C. § 323. In that regard, the provisions of 11 U.S.C. § 101(9) states in pertinent part:

"(9) "creditor" means—

(A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor;"

A customer is made a creditor by the provisions of 15 U.S.C. § 78*lll* which state in pertinent part:

"For purposes of this chapter, including the application of the Bankruptcy Act to a liquidation proceeding:

(2) Customer.—The term "customer" of a debtor means any person ... who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collat-

eral security, or for purposes of effecting transfer."

Under these provisions, it is readily apparent that the customers are creditors of the estate, and that as creditors their interests may be represented by the Trustee. Similarly, SIPC is a creditor of the estate by virtue of the statutory right of subrogation afforded to it under the provisions of 15 U.S.C. § 78aaa *et seq. See for example,* 15 U.S.C. § 78fff–3(a). As a creditor, SIPC's interests may also be represented by the Trustee. This is made especially true in view of the fact that SIPC has consented to the Trustee's representation of their interests in this proceeding. Therefore, it must be concluded that Objections based on the grounds that the Trustee does not have standing to represent the foregoing interests are also without merit.

## VI

■ Having determined that the Objections to the proposed compromise do not stand as an impairment to the approval of the compromise, it must finally be determined whether or not the compromise should be approved. As previously indicated, in making that determination, the Court must consider whether or not the compromise is in the best interests of the estate. The factors which must be examined in considering the best interests of the estate involve weighing the terms of the settlement against the relative merits and costs of litigating the claims.

■ In the present case the Trustee has testified that prosecuting an action against Arthur Young, including appeals, would be a difficult case to litigate and would involve a tracing of the brokerage's transactions during the period Arthur Young served as auditor. Although the Trustee was uncertain as to the elements which must be shown to prevail in a cause of action against an accountant for malpractice, one of the elements would be a demonstration of those transfers which occurred during Arthur Young's employment. Such a showing would be required in order to establish the existence of a deficiency and the

cause thereof. The Court notes from its prior involvement in this liquidation that this presentation would entail a significant amount of time and effort by the Trustee and his counsel. The fact that the Trustee testified that he was unable to determine the amount of funds diverted from the brokerage on the date Arthur Young's employment was terminated is illustrative of that difficulty. The difficulty of undertaking such an action is further complicated by the fact that Arthur Young has indicated an intent to strenuously contest any suit against it which is brought on by a denial of this compromise. Additionally, the Trustee is not only confronted with the burden of presenting his case, but is also faced with the uncertainty of having to survive any requests for summary adjudication, a prospect made more difficult in light of the fact that Arthur Young's liability, as previously explained, may have been absolved or ratified by Todman's alleged negligence. Therefore, it appears that litigation against Arthur Young could only result in a judgment for the deficiencies which existed of the time their employment was terminated. Accordingly, it is to be concluded that litigation against Arthur Young would be both burdensome for the estate to undertake, and may not have the prospect of producing a greater recovery for the estate than the settlement already proposed.

In addition to these factors, the Court must weigh the costs of the prospective litigation against the possibility of success. Although the Trustee indicated that he had not investigated the time and expenses Plaintiffs in similar cases had needed to prosecute similar actions, he indicated that he anticipated the costs of an action against Arthur Young would exceed one million dollars. While the Court does not agree with this estimate and believes it to be excessive, it is reasonable to conclude that a suit against Arthur Young, at this point in the proceedings, would be very expensive and, therefore, burdensome to both the Trustee and the estate. Requiring a trial in that cause would also have the effect of negating the time and expenses

which have been invested in reaching the agreement presently before the Court. Furthermore, since the time involved in bringing the Todman action to trial may be representative of the time a suit against Arthur Young would involve, then requiring that case to be litigated would present still another delay in reaching a conclusion to these liquidation proceedings.

Based upon the evidence which has been presented, it appears that the amount of the compromise is approximately one-half of what Arthur Young's potential liability. In view of that fact, this Court cannot justify requiring the estate to further burden itself with costs that will, in all likelihood, equal or exceed the amount that might actually be awarded in such an action. Although the probable success of such a suit may be good, the costs in obtaining that success appear to be prohibitive. Accordingly, this Court finds that the interests of the creditors would be best served by an acceptance and approval of this compromise.

In reaching these conclusions, the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are referred to in this Opinion.

It is ORDERED that the Objections of the McKennys, the Partners, Jesionowski, Todd, Betz, Coon, McGhee, Thompson, and Henninger, Irene Smith, and the Fredrick S. Todman Company be, and are hereby, OVERRULED.

It is FURTHER ORDERED that the Motion for Approval of Settlement with Arthur Young & Company be, and is hereby, GRANTED.

It is FURTHER ORDERED that the settlement with Arthur Young & Company be, and is hereby, APPROVED.