### In re CINCINNATI MICROWAVE, INC., Debtor.

### Bankruptcy No. 97–10882.

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

June 25, 1997.

Edmund J. Adams, Ronald E. Gold, Cincinnati, OH, for Debtor.

Louis F. Solimine, Steven E. Hieatt, Cincinnati, OH, for UCC.

Richard S. Wayne, Philomena S. Ashdown, Cincinnati, OH, for Plaintiffs in Shareholder Litigation.

Neal J. Weill, Cincinnati, OH, Asst. U.S. Trustee.

## DECISION AND ORDER ON DEBTOR'S MOTION TO APPROVE SETTLEMENT

BURTON PERLMAN, Bankruptcy Judge.

■ Before the present bankruptcy case was filed, four share-holder lawsuits were filed against debtor in October and November, 1995, in the U.S. District Court for this district. The four separate lawsuits were consolidated into a single class action. The nature of the claims asserted was for violation of provisions of the Securities Act of 1933 and the Securities Exchange Act of 1934 and for violations of the common law of negligent misrepresentation and fraud in connection with the sale of debtor's common stock. Debtor entered into a Settlement Agreement with the Plaintiffs in the litigation, and now, pursuant to F.R.B.P. 9019(a), moves for approval by this court of that Settlement Agreement. (The term "Plaintiffs" as used hereafter will be understood to refer to the parties who have entered into the Settlement Agreement with debtor.) The Unsecured Creditors' Committee ("UCC") objects to approval of the Settlement Agreement.

This court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. This is a core proceeding arising under 28 U.S.C. § 157(b)(2)(A) and (B).

Further reference to events concerning the consolidated class action in the District Court must be made. There were a number of defendants in that suit other than debtor. Settlement was reached with all defendants, and that settlement was presented for approval to the District Court. That court issued Order and Final Judgment on March 21, 1997, approving the Settlement Agreement. (In its Order and Final Judgment, the

District Court made reference to a "Preliminary Order" dated January 21, 1997, but it is clear from the context that the Preliminary Order did not conclude the process of approval by the court.)

Debtor was expressly excluded from the operation of the Order and Final Judgment of March 21, 1997 pursuant to footnote 1 on the first page of the Order. In that footnote appears the following:

> Cincinnati Microwave, Inc. ("Microwave" or the "Company") is not a Defendant for the purpose of this Order and Final Judgment because on February 14, 1997, it filed for protection under Chapter 11 of the United States Bankruptcy Code. Plaintiffs have discussed with Microwave options for resolving its involvement in the litigation and a tentative agreement has been reached which will result in a final dismissal of the lawsuits as to the Company, subject to the approval of the U.S. Bankruptcy Court.

The terms of the Settlement Agreement so far as debtor is concerned are the following:

> (a) The Plaintiffs will have an allowed general unsecured claim in this chapter 11 case in the amount of $600,000 (the "Claim"); and

> (b) In the event the Plaintiffs receive a distribution of cash and shares on account of the Claim, the Plaintiffs will have the option to convert the cash portion of the distribution received on account of the Claim to shares, based on the same per share value as accorded to the distributed shares.

The position of the UCC in objecting to the Settlement Agreement is that the terms of the Settlement Agreement which apply to debtor are in direct conflict with § 510(b) of the Bankruptcy Code. The statute there provides:

> (b) For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.

11 U.S.C. § 510(b).

The UCC has submitted together with its Objection to the settlement, a copy of the complaint in the consolidated class action. The complaint states the nature of the action to be:

> This is a securities class action brought on behalf of (i) all persons, other than Defendants, who purchased shares of the common stock of Cincinnati Microwave, Inc. ("Cincinnati Microwave" or the "Company"), on the open market between July 12, 1995 and October 13, 1995 and who suffered damages as a result thereof (the "Open Market Class"); and (ii) all persons who purchased shares of the common stock of Cincinnati Microwave from the Defendants, pursuant or traceable to an August 24, 1995 secondary public offering (the "Offering"), between August 24, 1995 and October 13, 1995, and who suffered damages as a result thereof. . . .

It is the litigation of the consolidated class action brought by Plaintiffs so far as it applied to debtor which is proposed to be settled by the Settlement Agreement. As debtor has stated in its motion, the matter is here pursuant to F.R.B.P. 9019(a). That Rule comes into play here because the present bankruptcy case was filed on February 14, 1997, and the Settlement Agreement was not concluded until after that date. Rule 9019(a) states simply that "a compromise or settlement" may be approved by the court after motion by the trustee (the position occupied here by movant debtor-in-possession) and "after notice and a hearing."

After due consideration, this court concludes that the Settlement Agreement between debtor and the Plaintiffs cannot be approved. The reason for denying approval is that when § 510(b) of the Bankruptcy Code is applied to the facts before the court, debtor would receive no consideration for its proposed contribution to the Settlement Agreement.

Our conclusion follows from the operation of § 510(b) itself. The claims of Plaintiffs without doubt are "for damages arising from the purchase or sale of ... a security." The "security" in this case is common stock. That being so, the statute provides that the claim or claims of Plaintiffs have "the same priority as common stock." In the present case, holders of common stock will take nothing on distribution for the following reason.

A fact which is undisputed by any of the parties is that unsecured creditors in this case will receive less than 100% distribution under any plan which is filed. As a matter of law, for purposes of distribution common stock is subordinate to the claims of unsecured creditors. It follows, then, that upon a distribution under a plan of liquidation, these Plaintiffs would not be entitled to take anything.

■ Our conclusion implements the policy behind § 510(b). One court has put it: "Section 510(b) prevents a security holder from 'bootstrapping' an equity claim (subordinate to the claims of general unsecured creditors) to general unsecured creditors status simply by alleging fraud, rescission, or some other tort theory in the sale of the security." *In re Washington Bancorporation*, 1996 WL 148533, 1996 U.S. Dist. Lexis 3876 (D.C. 1996). "Bootstrapping" would indeed be the effect of approval of the Settlement Agreement which has been presented to the court.

In an effort to avert the outcome which we have reached, Plaintiffs, first, distinguish the cases presented by the UCC, second, contend that what is proposed to be settled here is a claim based upon a contract which has superseded the claims of Plaintiffs in their lawsuit, and, third, contend that the settlement could release claims which could be outside the scope of § 510(b). In all respects, the position of Plaintiffs is insupportable.

■ As to Plaintiffs' first position, distinguishing the cases of the UCC, this does not advance the matter, for the cases of the UCC are themselves not in point. The second position of Plaintiffs is based upon cases which deal with the effect in bankruptcy to be given to a settlement agreement reached prior to bankruptcy, *In re West*, 153 B.R. 821 (Bankr.N.D.Ill.1993) being representative of such cases. These cases have no application here. They are rendered irrelevant by F.R.B.P. 9019(a). Here, unlike *West*, we have a settlement arrived at after the bankruptcy was filed, and in such a case F.R.B.P. 9019(a) requires approval of the bankruptcy court. Until there is approval by the Bankruptcy, Court of a post-bankruptcy settlement, there is no effective agreement. *In re Northview Motors, Inc.*, 202 B.R. 389, 394–5 (Bankr.W.D.Pa.1996); *In re Bell & Beckwith*, 50 B.R. 422, 431 (Bankr.N.D.Ohio 1985). Cases such as *West* simply do not involve application of Rule 9019(a) for effectiveness of the agreement.

■ Finally, Plaintiffs' third contention that the release in the Settlement Agreement may forgive claims outside § 510(b), and therefore consideration does exist, fails because the Settlement Agreement is here settling specific litigation initiated by Plaintiffs, and all of the claims in that litigation deal with matters within § 510(b). Thus, the complaint in the consolidated class action contains six claims for relief. The first four claims for relief are for violations of the Securities Act of 1933 and the Securities Exchange Act of 1934 (and Rule 10b–5 promulgated thereunder) purportedly committed by the defendants in connection with the sales of the debtor's common stock referenced above. The other two claims for relief are for common law fraud and misrepresentation, also arising in connection with the purchase and sale of the debtor's common stock. The complaint prays for, *inter alia*, money damages and rescission for those Plaintiffs and members of the class who continue to own common stock of the debtor. There can be no question that the claims here proposed to be settled are in nature claims at which § 510(b) is aimed. It has been stated that "The benchmark for determining the propriety of a bankruptcy settlement is whether the settlement is in the best interests of the estate." *In the Matter of Energy Co–op. Inc.* 886 F.2d 921, 927 (7th Cir.1989). Because the allowance of an unsecured claim to the Plaintiffs by the debtor for which debtor would receive no consideration, cannot be said to be in the best interest of

the estate, debtor's Motion to Approve Settlement Agreement is denied.

So Ordered.